Brandon B. McDonald, Esq.
Nevada Bar No.: 11206
McDONALD LAW OFFICES, PLLC
2505 Anthem Village Drive, Ste. E-474
Henderson, NV 89052
Telephone: (702) 385-7411
Facsimile: (702) 664-0448
Attorneys for Debtors

# UNITED STATES BANKRUPTCY COURT

# DISTRICT OF NEVADA

| | |
|---|---|
| In re:<br><br>JON RICHARDSON and SANDRA ELIZABETH RICHARDSON,<br><br>                  Debtor. | Case No.:  13-11392-MKN<br>Chapter 11<br><br>Hearing Date:  10/29/14<br>Hearing Time: 9:30 a.m. |

## DEBTOR'S OBJECTION TO PROOF OF CLAIM OF BANK OF NEVADA

Jon Richardson and Sandra Richardson, debtor and debtor-in-possession ("Debtors"), by and through their counsel, Brandon B. McDonald, Esq. of McDonald Law Offices, PLLC, hereby respectfully submit their Objection to the Proof of Claim of Bank of Nevada, Claim No. 7-1 in the Claims Register (the "Objection"). Through this Objection, Debtors object to the Proof of Claim as it fails to set forth a basis for a claim against the Debtors.

This Objection is made and based on the points and authorities provided herein, the Declaration of Jon Richardson in Support of the Objection to Proofs of Claim, the pleadings, papers, and other records on file with the clerk of the above-captioned Court, judicial notice which is hereby requested, and the argument of counsel entertained by the Court at the time of the hearing of this Objection.

///

///

1

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.

## INTRODUCTION

Bank of Nevada's Proof of Claim filed on March 20, 2013 for $202,490.89 must be withdrawn as it is not allowed by Nevada law.  In recent cases before the Nevada Supreme Court involving the interpretation of NRS 40.455, the Court has determined that the mere filing of a complaint does not toll the time to file an "application of the judgment creditor" seeking a deficiency judgment.  Bank of Nevada filed a complaint for the deficiency judgment but did not file an "application" as defined by the Nevada Supreme Court within the required six month time period.  Furthermore, Bank of Nevada's State Court complaint was dismissed by the State Court (and not reinstated).  This dismissal is a critical fact because it has the legal effect of determining that Bank of Nevada's complaint was as if no complaint had been filed at all; thus there is no tolling effect and it has long been past the six month deadline. As Bank of Nevada failed to file an "application" as defined by the Nevada Supreme Court, nor is there a complaint which is of any legal effect; its Proof of Claim representing the would be deficiency judgment must be removed from the claims register.

## II.

## BRIEF STATEMENT OF RELEVANT FACTS

**A.    Bank of Nevada's Filing of Their State Court Complaint Alleging Deficiency.**

1.      On November 20, 2012 Bank of Nevada filed their Complaint in Nevada State Court against the Debtors herein.  Declaration of Jon Richardson in Support of the Omnibus Objection to Proofs of Claim at ¶2 (the "Richardson Declaration") concurrently filed herein; see also Complaint filed in Bank of Nevada v. Jon Richardson, et al., Eighth Judicial District, Clark County, District Court Case No. A-12-672304-C attached herein as Exhibit 1.

2. As the Complaint alleges, the Debtors entered into a loan agreement (which was for their former primary residence), on September 1, 2005. *Id.* at ¶5. The Debtors and Bank of Nevada agreed to a short sale of the underlying real property. As a result of the short sale conducted on May 25, 2012, the Complaint alleges there was a deficiency balance of $202,490.89. *Id.* at ¶6. Richardson Declaration at ¶3.

3. Between the time of the sale on May 25, 2012, and the filing of the Complaint by Bank of Nevada on November 20, 2012, nearly six months had passed. Richardson Declaration at ¶4.

4. On September 30, 2013 Bank of Nevada's state court case was dismissed by the District Court Judge. Order of Dismissal Without Prejudice, attached herein as Exhibit 2. Bank of Nevada's case was not reinstated. See State Court Case Docket, attached herein as Exhibit 3; see also Richardson Declaration at ¶5.

**B.    Fact Related to Debtor's Bankruptcy Filing and Bank of Nevada's Proof of Claim.**

5. The Debtors filed a petition for relief under Chapter 13 of the Bankruptcy Code on February 22, 2013, which was been converted to a Chapter 11 proceeding. Richardson Declaration at ¶6.

6. On March 20, 2013 Bank of Nevada filed their Proof of Claim which alleges that $202,490.89 was due as "Money Loaned – Deficiency balance." Proof of Claim, attached herein as Exhibit 4. Richardson Declaration at ¶7.

7. As Bank of Nevada failed to file an "application" prior to Debtors' bankruptcy proceeding, though there was time permitted with the six months permitted under NRS 40.455; Bank of Nevada's Proof of Claim for $202,490.89 must be removed from the claims register as it not permitted under Nevada law.

# III.

# LEGAL ARGUMENT

**A.    Standard for Disallowance of Proofs of Claim.**

Section 502(a) of the Bankruptcy Code provides that any proof of claim "is deemed allowed, unless a party in interest ... objects." *Ashford v. Consolidated Pioneer Mortg.* (*In re Consolidated Pioneer Mortg.*), 178 B.R. 222, 225 (B.A.P. 9th Cir. 1995) (*citing Whitney v. Dresser*, 200 U.S. 532, 534-35 (1906)). Unlike a proof of claim, which must be filed before the bar date, an objection to a proof of claim may be filed at any time. *In re Consolidated Pioneer Mortg.*, 178 B.R. at 225 (*citing In re Thompson*, 965 F.2d 1136, 1147 (1st Cir. 1992), *In re Kolstad*, 928 F.2d 171, 174 (5th Cir. 1991), *cert. denied*, 502 U.S. 958 (1991)). Section 502(b) of the Bankruptcy Code and Bankruptcy Rule 3007 permit a party in interest to object to a filed proof of claim. An objection to a proof of claim initiates a contested matter and requires that a hearing be held. 11 U.S.C. § 502(b); Fed. R. Bankr. P. 3007(a); Local Rule 3007(c).

The Ninth Circuit Court of Appeals has described the shifting burdens of proof with respect to objections to proofs of claim:

> Inasmuch as Rule 3001(f) and section 502(a) provide that a claim or interest as to which proof is filed is "deemed allowed," the burden of initially going forward with the evidence as to the validity and the amount of the claim is that of the objector to that claim. In short, the allegations of the proof of claim are taken as true. If those allegations set forth all the necessary facts to establish a claim and are not self-contradictory, they prima facie establish the claim. Should objection be taken, the objector is then called upon to produce evidence and show facts tending to defeat the claim by probative force equal to that of the allegations of the proofs of claim themselves. **But the ultimate burden of persuasion is always on the claimant.** Thus, it may be said that the proof of claim is some evidence as to its validity and amount.  It is strong enough to carry over a mere formal objection without more.

*Wright v. Holm* (*In re Holm*), 931 F.2d 620, 623 (9th Cir. 1991) (quoting 3 L. King, COLLIER ON BANKRUPTCY § 502.02, at 502-22 (15th ed. 1991)) [footnotes omitted] [emphasis added]. *See also*

*Lundell v. Anchor Constr. Specialists, Inc.*, 223 F.3d 1035, 1040 (9th Cir. 2000) (holding that the bankruptcy court correctly understood that the ultimate burden of persuasion was on the creditor); *Spencer v. Pugh* (*In re Pugh*), 157 B.R. 898, 901 (B.A.P. 9th Cir. 1993) (holding claimant bears ultimate burden of persuasion as to validity and amount of the claim by a preponderance of the evidence). If the objector produces sufficient evidence to negate one or more of the sworn facts in the proof of claim, the burden reverts to the claimant to prove the validity of the claim by a preponderance of the evidence. *Lundell*, 223 F.3d at 1039 (citations omitted).

However, where a claimant fails to attach writings to a proof of claim, the "claim is not entitled to be considered *prima facie* evidence of the claim's validity." *In re Consolidated Pioneer Mortg.*, 178 B.R. at 226 (emphasis added). This is due to Bankruptcy Rule 3001(c)'s express requirement that "when a claim...is based on a writing, the original or a duplicate shall be filed with the proof of claim." However, where such records may be voluminous, a claimant can comply with Bankruptcy Rule 3001 by submitting a detailed summary. *Heath v. American Express Travel Related Serv. Co., Inc.* (*In re Heath*), 331 B.R. 424, 432 (B.A.P. 9th Cir. 2005). Although there "is no uniform standard for what must be contained in such summary," it is clear that, at the very minimum, there must be a "breakdown of interest and other charges." *Id.* Where the proof of claim omits an essential element of the substantive claim, the objector "need only note the absence of any such showing" and need not offer evidence in support. *Atwood v. Chase Manhattan Mortgage Co.* (*In re Atwood*), 293 B.R. 227, 233 (B.A.P. 9th Cir. 2003).

In accordance with Section 502(b) of the Bankruptcy Code, the validity and amount of the claim shall be determined as of the date of the filing of the bankruptcy petition. Section 502(b)(1) requires disallowance of a claim if "such claim is unenforceable against the debtor and property of the debtor, under any agreement or applicable law for a reason other than because such claim is contingent or

unmatured. . ." 11 U.S.C. § 502(b)(1). The "applicable law" referenced in Section 502(b)(1) includes bankruptcy law as well as other federal and state laws. *Cavaliere v. Sapir*, 208 B.R. 784, 786-787 (D. Conn. 1997) (providing that "applicable law" includes bankruptcy law). A debtor is therefore allowed to raise any federal or state law defenses to a claim. *In re G.I. Industries, Inc.*, 204 F.3d 1276, 1281 (9th Cir. 2000) (stating that a claim cannot be allowed under Section 502(b)(1) if it is unenforceable under nonbankruptcy law); *Johnson v. Righetti*, 756 F.2d 738, 741 (9th Cir. 1985) (finding that the validity of the claim may be determined under state law); *In re Eastview Estates II*, 713 F.2d 443, 447 (9th Cir. 1983) (applying California law).

**B.    UNDER NEVADA LAW BANK OF NEVADA'S PROOF OF CLAIM MUST BE DISALLOWED BECAUSE THEIR CLAIM IS IN VIOLATION OF NRS 40 ACCORDING TO THE NEVADA SUPREME COURT BECAUSE THEY FAILED TO FILE AN APLICATION FOR DEFICIENCY WITHIN SIX MONTHS.**

Bank of Nevada's Proof of Claim must be stricken from the claims register as it is an unpermitted claim pursuant to Nevada law as Bank of Nevada failed to timely file an application within the mandated six month period. On October 13, 2011, the Nevada Supreme Court clarified the meaning of the term "application" in NRS 40.455(1) and held that the mere filing of a complaint is insufficient to serve as an application for deficiency judgment. *Walters v. Eighth Judicial Dist. Court*, 263 P.3d 231, 234 (Nev. 2011). Instead, a plaintiff seeking deficiency judgment must file a separate written motion with the court, as provided in NRCP 7(b)(1) :

> An application to the court for an order shall be by motion which, unless made during a hearing or trial, shall be made in writing, shall state with particularity the grounds therefor, and shall set forth the relief or order sought. The requirement of writing is fulfilled if the motion is stated in a written notice of the hearing of the motion.

*Id.*

*Walters* involved the issue whether a complaint for breach of guaranty was sufficient to satisfy the "six-month application" requirement of NRS 40.455(1). *Id.* at 232. In *Walters*, the lender Community Bank of Nevada ("CBN") filed a third-party complaint against Walters, an individual who personally guaranteed a $15,250,000 loan provided to a group of borrowers by CBN. *Id.* at 232. In December 2008 the borrowers defaulted and a trustee's sale was conducted. In April 2009, CBN filed an answer, counterclaim, cross-claim, and third-party complaint in response to Walters' second amended complaint. *Id.* at 233. In its counterclaim, CBN asserted breach of guaranty against Walters and also alleged that Walters waived the one-action rule and that he defaulted on his guaranty. *Id.* In its cross-claim, CBN specifically sought to recover the deficiency against the borrowers pursuant to NRS 40.455(1). *Id.* CBN also alleged a deficiency on the amount due on the loan and the "amount of the credit bid in an amount to be proved-up at trial." *Id.* In addition, along with its counterclaim and cross-claim, CBN also filed a motion for summary judgment and "clearly stated in its motion for summary judgment that it was giving ... credit for the sale price of [the property]." *Id.* The district court concluded, and the Nevada Supreme Court agreed, that the claims asserted by CBN (which included a claim for deficiency pursuant to NRS 40.455(1)) and CBN's motion for summary judgment (which offered a credit for the property) were both filed within six (6) months after the trustee's sale and together satisfied the requirements of NRS 40.455(1). *Id.* at 234.

In *Lavi v. Eighth Judicial Dist. Court of State ex rel. Cnty. of Clark*, 58968, 2013 WL 3278563 (Nev. May 24, 2013) reh'g denied, 130 Nev. Adv. Op. 38, 325 P.3d 1265 (2014)[1], the Court in applying *Walters*, determined that a lender's argument that "its complaint satisfied the statutory time requirement because the complaint notified Lavi that BB & T would seek a deficiency judgment and it was filed

---

[1] This case has an unpublished disposition and ordinarily may not be cited as legal authority pursuant to Nevada Supreme Court Rules 123. However that same rule states that if the unpublished opinion may be regarded as precedent if it is relevant to doctrine of law. *Id.*

prior to the foreclosure sale" was disregarded.  The Court also specifically noted that the summary judgment motion filed by the lender was filed well after the six month time period permitted under the NRS 40.455(1).  *Id.*  The Nevada Supreme Court in addressing the lender's request for rehearing and in summarizing its prior decisions stated:

> Lavi then filed a petition for a writ of mandamus or a writ of prohibition in this court, challenging the district court's order. <u>Lavi asserted that BB & T was barred from recovering a deficiency judgment because BB & T did not apply for it within six months after the trustee's sale.</u>  We agreed and issued a writ of mandamus compelling the district court to dismiss the guaranty action against Lavi.

*Lavi v. Eighth Jud. Dist. Ct.*, 130 Nev. Adv. Op. 38, 325 P.3d 1265, 1267 (2014) [emphasis added].

The Nevada Supreme Court further affirmed that the requirement in *Walters* to timely file an application for deficiency judgment applied in that case (a case where a deficiency application had been timely filed) as well in *Lavi*, a case where the application was not filed untimely.  *Id.* at 1268.

Bank of Nevada's complaint or the related proceedings are also of no legal effect because it is as if it had never been filed as it was dismissed.  The Court in *Humphreys v. United States*, 272 F.2d 411, 412 (9th Cir. 1959) in referring to FRCP 41(a)(2), which similarly to NRCP 41(a)(2) allows for the dismissal of cases by the court without prejudice, stated "[a] a suit dismissed without prejudice pursuant to Rule 41(a)(2) leaves the situation the same as if the suit had never been brought in the first place."  The fact that a case dismissed without prejudice acts as if has never been filed at all has been noted in several, such as *City of S. Pasadena v. Mineta*, 284 F.3d 1154, 1157-58 (9th Cir. 2002):

> We have adhered slavishly to this interpretation of Rule 41(a).  *See, e.g., Commercial Space Mgmt. Co. v. Boeing Co.,* 193 F.3d 1074, 1078 (9th Cir.1999) ("it is beyond debate that [under] a dismissal under Rule 41(a)(1) ... the parties are left as though no action had been brought"); *Wilson v. City of San Jose,* 111 F.3d 688, 692 (9th Cir.1997) ("Such a dismissal leaves the parties as though no action had been brought.") (citation omitted); *Concha v. London,* 62 F.3d 1493, 1506–07 (9th Cir.1995) (same); *Humphreys v. United States,* 272 F.2d 411, 412 (9th Cir.1959) ("[A] suit dismissed without prejudice pursuant to Rule 41(a)(2) leaves

8

the situation the same as if the suit had never been brought in the first place.")
(citations and footnote omitted).

Thus a case which is dismissed without prejudice cannot create any modicum of tolling with regard to the statute of limitations, and specifically NRS 40.455.

Bank of Nevada proof of claim must be dismissed based on the Nevada Supreme Court's interpretation of NRS 40.455(1).  Bank of Nevada, in stark contrast to CBN in the *Walters* case, plaintiff did nothing to satisfy the six-month requirement of NRS 40.455(1). While Bank of Nevada filed its lawsuit against the Richardsons in November 2012, it failed to file an "application" seeking the deficiency. See NRS 40.455(1); NRCP 7(b)(1); *Walters* at 234.  Bank of Nevada was required to file its application for deficiency judgment in November 2012 as the foreclosure sale was May 2012. NRS 40.455(1). Bank of Nevada failed to do so.  Moreover, Bank of Nevada never asserted a claim for deficiency or filed a proper application for deficiency judgment, as mandated by the Nevada Supreme Court in *Walters*.  While Bank of Nevada did file an application for default judgment, that application was filed in January 2013, which would have been approximately 8 months past the time allowed by NRS 40.455(1); Exhibit 3. There is no issue of disputed fact in this case – Bank of Nevada failed to apply for a deficiency judgment within six (6) months of the date of the short sale. Because NRS 40.455(1) clearly and unambiguously requires an application for deficiency within six (6) months after the claimed deficiency is incurred, Bank of Nevada's failure to do so is fatal to their proof of claim.

The facts of the Richardsons' short sale are squarely on point with the issues addressed in *Walters* and in *Lavi*; thus Bank of Nevada proof of claim should be dismissed.  However even assuming that Bank of Nevada were to assert that the complaint tolled the time to file an application, the State Court Case was dismissed.  Bank of Nevada could have asked to have the State Court issue addressed through lifting the stay but they did not.  Bank of Nevada could have left their State Court case open through asking for the same, but did not.  Because Bank of Nevada's State Court case was

dismissed without prejudice by the State Court, without objection, it is as if the State Court case had never been filed. *See Humphreys*, 272 F.2d at 412; *Mineta*, 284 F.3d at 1157-58. With the State Court being dismissed and having no effect, no reasonable argument can be made with regard to whether Bank of Nevada filed an application pursuant to NRS 40.455(1) – because it is as if it has never happened.

In any regard Bank of Nevada's Proof of Claim of claim must be removed because under applicable state law, the deficiency judgment is not permitted. See 11 U.S.C. § 502(b)(1) (stating if "such claim is unenforceable against the debtor and property of the debtor, under any agreement or applicable law for a reason other than because such claim is contingent or unmatured. . ." 11 U.S.C. § 502(b)(1)).

## IV.

## CONCLUSION

Wherefore, Debtors object to the proof of claim filed by Bank of Nevada for $202,490.89 representing its claimed deficiency judgment, as such claim is not allowable under Nevada statute as interpreted by the Nevada Supreme Court.

Dated this 25th day of September, 2014.

McDONALD LAW OFFICES, PLLC


__/s/ Brandon B. McDonald_____
BRANDON B. McDONALD, ESQ.
Nevada Bar No.: 11206
2450 St. Rose Parkway, Ste. 120
Henderson, NV 89074
Attorneys for Debtors

EXHIBIT 1

CIVIL COVER SHEET

A-12-672304-C
XXX

Clark County, Nevada

Case No. _____
*(Assigned by Clerk's Office)*

## I. Party Information

| | |
|---|---|
| Plaintiff(s) (name/address/phone): BANK OF NEVADA | Defendant(s) (name/address/phone): JON RICHARDSON and SANDRA RICHARDSON |
| Attorney (name/address/phone):<br>Christine A. Roberts, Esq., Sullivan Hill Lewin Rez & Engel<br>228 S Fourth Street, First Floor, LV, NV 89101<br>702-382-6440 | Attorney (name/address/phone): |

## II. Nature of Controversy (Please check applicable bold category and applicable subcategory, if appropriate)

☐ **Arbitration Requested**

### Civil Cases

**Real Property**

- ☐ **Landlord/Tenant**
  - ☐ Unlawful Detainer
- ☐ **Title to Property**
  - ☐ Foreclosure
  - ☐ Liens
  - ☐ Quiet Title
  - ☐ Specific Performance
- ☐ **Condemnation/Eminent Domain**
- ☐ **Other Real Property**
  - ☐ Partition
  - ☐ Planning/Zoning

**Torts**

Negligence

- ☐ **Negligence – Auto**
- ☐ **Negligence – Medical/Dental**
- ☐ **Negligence – Premises Liability** (Slip/Fall)
- ☐ **Negligence – Other**

- ☐ **Product Liability**
  - ☐ Product Liability/Motor Vehicle
  - ☐ Other Torts/Product Liability
- ☐ **Intentional Misconduct**
  - ☐ Torts/Defamation (Libel/Slander)
  - ☐ Interfere with Contract Rights
- ☐ **Employment Torts** (Wrongful termination)
- ☐ **Other Torts**
  - ☐ Anti-trust
  - ☐ Fraud/Misrepresentation
  - ☐ Insurance
  - ☐ Legal Tort
  - ☐ Unfair Competition

**Probate**

- ☐ **Summary Administration**
- ☐ **General Administration**
- ☐ **Special Administration**
- ☐ **Set Aside Estates**
- ☐ **Trust/Conservatorships**
  - ☐ Individual Trustee
  - ☐ Corporate Trustee
- ☐ **Other Probate**

**Other Civil Filing Types**

- ☐ **Construction Defect**
  - ☐ Chapter 40
  - ☐ General
- ☒ **Breach of Contract**
  - ☐ Building & Construction
  - ☐ Insurance Carrier
  - ☐ Commercial Instrument
  - ☒ Other Contracts/Acct/Judgment
  - ☐ Collection of Actions
  - ☐ Employment Contract
  - ☐ Guarantee
  - ☐ Sale Contract
  - ☐ Uniform Commercial Code
- ☐ **Civil Petition for Judicial Review**
  - ☐ Other Administrative Law
  - ☐ Department of Motor Vehicles
  - ☐ Worker's Compensation Appeal

- ☐ **Appeal from Lower Court** *(also check applicable civil case box)*
  - ☐ Transfer from Justice Court
  - ☐ Justice Court Civil Appeal
- ☐ **Civil Writ**
  - ☐ Other Special Proceeding
- ☐ **Other Civil Filing**
  - ☐ Compromise of Minor's Claim
  - ☐ Conversion of Property
  - ☐ Damage to Property
  - ☐ Employment Security
  - ☐ Enforcement of Judgment
  - ☐ Foreign Judgment – Civil
  - ☐ Other Personal Property
  - ☐ Recovery of Property
  - ☐ Stockholder Suit
  - ☐ Other Civil Matters

## III. Business Court Requested (Please check applicable category; *for Clark or Washoe Counties only*.)

- ☐ NRS Chapters 78-88
- ☐ Commodities (NRS 90)
- ☐ Securities (NRS 90)
- ☐ Investments (NRS 104 Art. 8)
- ☐ Deceptive Trade Practices (NRS 598)
- ☐ Trademarks (NRS 600A)
- ☐ Enhanced Case Mgmt/Business
- ☐ Other Business Court Matters

November 20, 2012
_____
Date

*[signature]*
_____
Signature of initiating party or representative

Form PA 201
Rev. 2.3E

Electronically Filed
11/20/2012 11:04:09 AM

1

SULLIVAN, HILL, LEWIN, REZ & ENGEL,
A Professional Law Corporation

2
   Christine A. Roberts, NV SBN 6472
   Elizabeth E. Stephens, NV SBN 5788

3
228 South Fourth Street, First Floor
Las Vegas, NV 89101

4
Telephone: (702) 382-6440
Fax Number: (702) 384-9102

5

Attorneys for Creditor, Bank of Nevada

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**CLERK OF THE COURT**

**DISTRICT COURT**

**CLARK COUNTY, NEVADA**

| | |
|---|---|
| BANK OF NEVADA, | ) CASE NO. A-12-672304-C |
| Plaintiff, | ) DEPT. NO.: XXX |
| vs. | ) |
| JON RICHARDSON, an individual; and | ) |
| SANDRA RICHARDSON | ) |
| Defendants. | ) |

**COMPLAINT**

    COMES NOW, Plaintiff, BANK OF NEVADA ("Bank"), by and through its attorney, CHRISTINE A. ROBERTS, ESQ., of the law firm of SULLIVAN, HILL, LEWIN, REZ & ENGEL, and alleges and avers as follows:

**I. <u>JURISDICTION</u>**

    1.    Upon information and belief, Jon Richardson is an individual residing in Clark County, Nevada.

    2.    Upon information and belief, Sandra Richardson is an individual residing in Clark County, Nevada.

    3.    The contract between Plaintiff and Defendants provides that the Defendants submit to the jurisdiction of the courts of Clark County, Nevada.

- 1 -

346400-v1

## II. BREACH OF CONTRACT

### (Loan One)

4.    Plaintiff realleges and reincorporates as though fully set forth herein paragraphs 1-3.

5.    On September 1, 2005, for valuable consideration, Debtors executed an Adjustable Rate Note (the "Note") in the original principal amount of $392,000 (the "Loan") for the benefit of Bank of Nevada.  Repayment on the loan was secured by collateral (Parcel # 178-19-811-039) recorded on September 1, 2005 by Fidelity National Title.

6.    On April 16, 2012, Debtors were approved for a short-sale by Bank of Nevada for a sale. Subsequently, the sale took place May 25, 2012, leaving a remaining deficiency balance owing by the Debtors of $202,490.89 on the First Deed of Trust.

7.    Defendants have failed to make payments on the deficiency balance.

8.    According to the contract between Plaintiff and Defendants, there is a provision for interest in the amount of 5.625%.

9.    Plaintiff made demand on Defendant numerous times for payment of the outstanding balance plus default interest.

10.    To date, Defendants balance due and owing on Loan One is $208,154.31, plus interest at a default rate.

## III. BREACH OF CONTRACT

### (Loan Two)

11.    On June 5, 2007, for valuable consideration, Borrowers executed a Prime Line Plus Note (the "Note") in the original principal amount of $56,000 (the "Loan") for the benefit of Bank of Nevada.

12.    The Loan was also secured by the collateral described in the Deed of Trust recorded June 11, 2007, Instrument Number 20070611-0001641.

13.    On April 16, 2012, Debtors were approved for a short-sale by Bank of Nevada for a sale. Subsequently, the sale took place May 25, 2012, leaving a remaining deficiency balance owing by the Debtors.

346400-v1

14.  Defendants have failed to make payments on the deficiency balance.

15.  According to the contract between Plaintiff and Defendants, there is a provision for default interest of 5.00% over the index.

16.  Plaintiff made demand on Defendant numerous times for payment of the outstanding balance plus default interest.

17.  To date, Defendants balance due and owing on Loan Two is $57,523.45, plus interest at a default rate.

## IV.  ATTORNEYS' FEES

18.  Plaintiff realleges and reincorporates as though fully set forth herein paragraphs 1-17.

19.  The contracts between Plaintiff and Defendants provides for attorneys' fees and costs for disputes regarding this contract including collection of outstanding balances.

20.  Plaintiff has had to retain the services of an attorney to pursue this matter.

21.  Plaintiff has incurred attorneys' fees and costs for pursuing this matter.

22.  Plaintiff requests an award of attorneys' fees and costs incurred in this matter, including future fees and costs for collection of this matter pre and post judgment as provided in the contract.

**WHEREFORE**, Plaintiff requests the following relief:

As to Defendants, Jon Richardson and Sandra Richardson:

a)  For Judgment against Defendants jointly and severally liable in the amount in excess of $10,000.00 plus default interest, from the time of default until judgment is collected;

b)  For attorneys' fees and costs for collection of the amounts due and owing, including post-judgment fees and costs;

c)  For any further relief the Court may so deem to grant.

Dated:    November 20, 2012

SULLIVAN, HILL, LEWIN, REZ & ENGEL
A Professional Law Corporation

By:  _____
CHRISTINE A. ROBERTS, ESQ.
Nevada Bar No. 6472
Attorneys for Bank of Nevada

- 3 -

346400-v1

EXHIBIT 2

# DISTRICT COURT

## CLARK COUNTY, NEVADA

Electronically Filed
09/30/2013 03:54:21 PM

BANK OF NEVADA,                        )
                                       )
        Plaintiff,              )
                                       )        Case No. A672304
vs.                                    )        Dept No. XXX
                                       )
JON RICHARDSON, et al.,                )
                                       )
        Defendant(s).           )
_____)

CLERK OF THE COURT

## ORDER OF DISMISSAL WITHOUT PREJUDICE

It appearing to the Court that the above-entitled case has been pending for more than one year and that no action has been taken for more that six months preceding the date of this Order.

IT IS HEREBY ORDERED that this action be, and the same hereby is, DISMISSED without prejudice pursuant to EDCR 2.90(a).

Please be advised that, pursuant to EDCR 2.90(c), a case which has been dismissed pursuant to this rule will be reinstated at the written request of a party or the party's attorney if the request is filed within 30 days of the date of service of written notice of entry of the dismissal.

DATED this 24th day of September, 2013

JERRY A. WIESE,
DISTRICT COURT JUDGE DEPARTMENT XXX

## CERTIFICATE OF SERVICE

I hereby certify that on or about the date e-filed, the forgoing was e-served, mailed or a copy was placed in the attorney's folder in the Clerk's Office:

Christine A. Roberts, Esq., SULLIVAN HILL LEWIN REZ & ENGEL

Vickie Freeman, JEA for Dept XXX

- ☐ Voluntary Dis
- ☒ Involuntary (stat) Dis
- ☐ Jdgmt on Arb Award
- ☐ Mtn to Dis (by deft)
- ☐ Stip Dis
- ☐ Stip Jdgmt
- ☐ Default Jdgmt
- ☐ Transferred
- ☐ Sum Jdgmt
- ☐ Non-Jury Trial
- ☐ Jury Trial

RECEIVED 35
SEP 30 2013
CLERK OF THE COURT

# REGISTER OF ACTIONS
## CASE NO. A-12-672304-C

| | | | |
|---|---|---|---|
| Bank of Nevada, Plaintiff(s) vs. Jon Richardson, Defendant(s) | § <br> § <br> § <br> § <br> § <br> § | Case Type: <br> Subtype: <br><br> Date Filed: <br> Location: <br> Cross-Reference Case Number: | Breach of Contract <br> Other <br> Contracts/Acc/Judgment <br> 11/20/2012 <br> Department 30 <br> A672304 |

---

### PARTY INFORMATION

|  |  | Lead Attorneys |
|---|---|---|
| Defendant | Richardson, Jon | |
| Plaintiff | Bank of Nevada | Christine A. Roberts <br> Retained <br> 702-728-5285(W) |

---

### EVENTS & ORDERS OF THE COURT

09/24/2013 | Status Check (9:00 AM) (Judicial Officer Wiese, Jerry A)
Status Check Re: Status of BK

Minutes
     09/24/2013 9:00 AM
     - There being no parties present. Court noted correspondence regarding a bankruptcy was submitted, however, a Notice of Bankruptcy had not been filed. COURT ORDERED, CASE DISMISSED WITHOUT PREJUDICE pursuant to EDCR 2.90.

Return to Register of Actions

EXHIBIT 3

# REGISTER OF ACTIONS

## CASE NO. A-12-672304-C

| | | | |
|---|---|---|---|
| Bank of Nevada, Plaintiff(s) vs. Jon Richardson, Defendant(s) | § § § § § § | Case Type:<br>Subtype:<br><br>Date Filed:<br>Location:<br>Cross-Reference Case Number: | Breach of Contract<br>Other<br>Contracts/Acc/Judgment<br>11/20/2012<br>Department 30<br>A672304 |

---

### PARTY INFORMATION

| | | Lead Attorneys |
|---|---|---|
| Defendant | Richardson, Jon | |
| | | |
| Plaintiff | Bank of Nevada | Christine A. Roberts<br>Retained<br>702-728-5285(W) |

---

### EVENTS & ORDERS OF THE COURT

**DISPOSITIONS**

09/30/2013 Order of Dismissal Without Prejudice (Judicial Officer: Wiese, Jerry A)
    Debtors: Jon Richardson (Defendant), Sandra Richardson (Defendant)
    Creditors: Bank of Nevada (Plaintiff)
    Judgment: 09/30/2013, Docketed: 10/07/2013

**OTHER EVENTS AND HEARINGS**

| | |
|---|---|
| 11/20/2012 | Case Opened |
| 11/20/2012 | Complaint<br>    Complaint |
| 11/21/2012 | Initial Appearance Fee Disclosure<br>    Initial Appearance Fee Disclosure |
| 12/05/2012 | Proof of Service<br>    Proof of Service as to Jon Richardson and Sandra Richardson |
| 01/04/2013 | Default<br>    Default |
| 01/09/2013 | Memorandum of Costs and Disbursements<br>    Memorandum of Costs and Disbursements |
| 01/09/2013 | Application for Default Judgment<br>    Application for Default Judgment Against Defendants Jon Richardson and Sandra Richardson |
| 01/09/2013 | Affidavit in Support of Default Judgment<br>    Affidavit of Mike Marcellette in Support of Application for Default Judgment |
| 01/17/2013 | Notice of Intent to Take Default<br>    Three Day Notice of Intent to Take Default |
| 01/28/2013 | Notice of Hearing<br>    Notice of Hearing to Prove Up for Default Judgment |
| 03/05/2013 | CANCELED   Prove Up  (9:00 AM) (Judicial Officer Wiese, Jerry A)<br>    Vacated - per Secretary<br>     02/21/2013 Reset by Court to 03/05/2013 |
| 03/05/2013 | Order Scheduling Status Check<br>    Order Scheduling Status Check |
| 09/24/2013 | Status Check  (9:00 AM) (Judicial Officer Wiese, Jerry A)<br>    Status Check Re: Status of BK<br>    Minutes<br>    Result: Dismissed Without Prejudice |
| 09/30/2013 | Order of Dismissal Without Prejudice<br>    Order of Dismissal Without Prejudice |

---

### FINANCIAL INFORMATION

Plaintiff Bank of Nevada

| | | | |
|---|---|---|---|
| Total Financial Assessment | | | 270.00 |
| Total Payments and Credits | | | 270.00 |
| Balance Due as of 08/27/2014 | | | 0.00 |

| | | | | |
|---|---|---|---|---|
| 11/20/2012 | Transaction Assessment | | | 270.00 |
| 11/20/2012 | Wiznet | Receipt # 2012-143844-CCCLK | Bank of Nevada | (270.00) |

EXHIBIT 4

B 10 (Official Form 10) (12/12)

| UNITED STATES BANKRUPTCY COURT | District of Nevada | PROOF OF CLAIM |
|---|---|---|

| Name of Debtor: JON RICHARDSON AND SANDRA ELIZABETH RICHARDSON | Case Number: 13-11392-MKN | |
|---|---|---|

NOTE: *Do not use this form to make a claim for an administrative expense that arises after the bankruptcy filing. You may file a request for payment of an administrative expense according to 11 U.S.C. § 503.*

| Name of Creditor (the person or other entity to whom the debtor owes money or property): BANK OF NEVADA | |
|---|---|
| Name and address where notices should be sent:<br>c/o Christine A. Roberts, Esq.<br>228 South 4th Street, 1st Floor<br>Las Vegas, NV 89101<br><br>Telephone number: (702) 382-6440  email: roberts@sullivanhill.com | **COURT USE ONLY**<br>☐ Check this box if this claim amends a previously filed claim.<br><br>Court Claim Number:_____<br>(*If known*)<br><br>Filed on:_____ |
| Name and address where payment should be sent (if different from above):<br><br><br>Telephone number:  email: | ☐ Check this box if you are aware that anyone else has filed a proof of claim relating to this claim. Attach copy of statement giving particulars. |

**1. Amount of Claim as of Date Case Filed:** $ 202,490.89

If all or part of the claim is secured, complete item 4.

If all or part of the claim is entitled to priority, complete item 5.

☐ Check this box if the claim includes interest or other charges in addition to the principal amount of the claim. Attach a statement that itemizes interest or charges.

**2. Basis for Claim:** Money Loaned -Deficiency balance
(See instruction #2)

| 3. Last four digits of any number by which creditor identifies debtor:<br><br>0 5 9 7 | 3a. Debtor may have scheduled account as:<br><br>(See instruction #3a) | 3b. Uniform Claim Identifier (optional):<br><br>(See instruction #3b) |
|---|---|---|

| 4. Secured Claim (See instruction #4)<br>Check the appropriate box if the claim is secured by a lien on property or a right of setoff, attach required redacted documents, and provide the requested information. | Amount of arrearage and other charges, as of the time case was filed, included in secured claim, if any:<br><br>$_____ |
|---|---|
| Nature of property or right of setoff: ☐Real Estate ☐Motor Vehicle ☐Other<br>Describe: | Basis for perfection:_____ |
| Value of Property: $_____ | Amount of Secured Claim: $_____ |
| Annual Interest Rate_____% ☐Fixed or ☐Variable<br>(when case was filed) | Amount Unsecured: $_____ |

**5. Amount of Claim Entitled to Priority under 11 U.S.C. § 507 (a). If any part of the claim falls into one of the following categories, check the box specifying the priority and state the amount.**

☐ Domestic support obligations under 11 U.S.C. § 507 (a)(1)(A) or (a)(1)(B).

☐ Wages, salaries, or commissions (up to $11,725*) earned within 180 days before the case was filed or the debtor's business ceased, whichever is earlier – 11 U.S.C. § 507 (a)(4).

☐ Contributions to an employee benefit plan – 11 U.S.C. § 507 (a)(5).

Amount entitled to priority:

☐ Up to $2,600* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use – 11 U.S.C. § 507 (a)(7).

☐ Taxes or penalties owed to governmental units – 11 U.S.C. § 507 (a)(8).

☐ Other – Specify applicable paragraph of 11 U.S.C. § 507 (a)(__).

$_____

*Amounts are subject to adjustment on 4/1/13 and every 3 years thereafter with respect to cases commenced on or after the date of adjustment.*

**6. Credits.** The amount of all payments on this claim has been credited for the purpose of making this proof of claim. (See instruction #6)

B 10 (Official Form 10) (12/12)    2

**7. Documents:** Attached are redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, security agreements, or, in the case of a claim based on an open-end or revolving consumer credit agreement, a statement providing the information required by FRBP 3001(c)(3)(A). If the claim is secured, box 4 has been completed, and redacted copies of documents providing evidence of perfection of a security interest are attached. If the claim is secured by the debtor's principal residence, the Mortgage Proof of Claim Attachment is being filed with this claim. *(See instruction #7, and the definition of "redacted".)*

DO NOT SEND ORIGINAL DOCUMENTS. ATTACHED DOCUMENTS MAY BE DESTROYED AFTER SCANNING.

If the documents are not available, please explain:

**8. Signature:** (See instruction #8)

Check the appropriate box.

☑ I am the creditor.    ☐ I am the creditor's authorized agent.    ☐ I am the trustee, or the debtor, or their authorized agent. (See Bankruptcy Rule 3004.)    ☐ I am a guarantor, surety, indorser, or other codebtor. (See Bankruptcy Rule 3005.)

I declare under penalty of perjury that the information provided in this claim is true and correct to the best of my knowledge, information, and reasonable belief.

Print Name:   Mike Marcellette
Title:   Legal and Recovery Officer
Company:   Bank of Nevada
Address and telephone number (if different from notice address above):   2700 W. Sahaha Ave
Las Vegas, NV 89102

(Signature)     03/20/2013   (Date)

Telephone number:     email:

*Penalty for presenting fraudulent claim:* Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 and 3571.

---

**INSTRUCTIONS FOR PROOF OF CLAIM FORM**

*The instructions and definitions below are general explanations of the law. In certain circumstances, such as bankruptcy cases not filed voluntarily by the debtor, exceptions to these general rules may apply.*

Items to be completed in Proof of Claim form

**Court, Name of Debtor, and Case Number:**
Fill in the federal judicial district in which the bankruptcy case was filed (for example, Central District of California), the debtor's full name, and the case number. If the creditor received a notice of the case from the bankruptcy court, all of this information is at the top of the notice.

**Creditor's Name and Address:**
Fill in the name of the person or entity asserting a claim and the name and address of the person who should receive notices issued during the bankruptcy case. A separate space is provided for the payment address if it differs from the notice address. The creditor has a continuing obligation to keep the court informed of its current address. See Federal Rule of Bankruptcy Procedure (FRBP) 2002(g).

**1. Amount of Claim as of Date Case Filed:**
State the total amount owed to the creditor on the date of the bankruptcy filing. Follow the instructions concerning whether to complete items 4 and 5. Check the box if interest or other charges are included in the claim.

**2. Basis for Claim:**
State the type of debt or how it was incurred. Examples include goods sold, money loaned, services performed, personal injury/wrongful death, car loan, mortgage note, and credit card. If the claim is based on delivering health care goods or services, limit the disclosure of the goods or services so as to avoid embarrassment or the disclosure of confidential health care information. You may be required to provide additional disclosure if an interested party objects to the claim.

**3. Last Four Digits of Any Number by Which Creditor Identifies Debtor:**
State only the last four digits of the debtor's account or other number used by the creditor to identify the debtor.

**3a. Debtor May Have Scheduled Account As:**
Report a change in the creditor's name, a transferred claim, or any other information that clarifies a difference between this proof of claim and the claim as scheduled by the debtor.

**3b. Uniform Claim Identifier:**
If you use a uniform claim identifier, you may report it here. A uniform claim identifier is an optional 24-character identifier that certain large creditors use to facilitate electronic payment in chapter 13 cases.

**4. Secured Claim:**
Check whether the claim is fully or partially secured. Skip this section if the

claim is entirely unsecured. (See Definitions.) If the claim is secured, check the box for the nature and value of property that secures the claim, attach copies of lien documentation, and state, as of the date of the bankruptcy filing, the annual interest rate (and whether it is fixed or variable), and the amount past due on the claim.

**5. Amount of Claim Entitled to Priority Under 11 U.S.C. § 507 (a).**
If any portion of the claim falls into any category shown, check the appropriate box(es) and state the amount entitled to priority. (See Definitions.) A claim may be partly priority and partly non-priority. For example, in some of the categories, the law limits the amount entitled to priority.

**6. Credits:**
An authorized signature on this proof of claim serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.

**7. Documents:**
Attach redacted copies of any documents that show the debt exists and a lien secures the debt. You must also attach copies of documents that evidence perfection of any security interest and documents required by FRBP 3001(c) for claims based on an open-end or revolving consumer credit agreement or secured by a security interest in the debtor's principal residence. You may also attach a summary in addition to the documents themselves. FRBP 3001(c) and (d). If the claim is based on delivering health care goods or services, limit disclosing confidential health care information. Do not send original documents, as attachments may be destroyed after scanning.

**8. Date and Signature:**
The individual completing this proof of claim must sign and date it. FRBP 9011. If the claim is filed electronically, FRBP 5005(a)(2) authorizes courts to establish local rules specifying what constitutes a signature. If you sign this form, you declare under penalty of perjury that the information provided is true and correct to the best of your knowledge, information, and reasonable belief. Your signature is also a certification that the claim meets the requirements of FRBP 9011(b). Whether the claim is filed electronically or in person, if your name is on the signature line, you are responsible for the declaration. Print the name and title, if any, of the creditor or other person authorized to file this claim. State the filer's address and telephone number if it differs from the address given on the top of the form for purposes of receiving notices. If the claim is filed by an authorized agent, provide both the name of the individual filing the claim and the name of the agent. If the authorized agent is a servicer, identify the corporate servicer as the company. Criminal penalties apply for making a false statement on a proof of claim.

B 10 (Official Form 10) (12/12)  3

## DEFINITIONS

**Debtor**
A debtor is the person, corporation, or other entity that has filed a bankruptcy case.

**Creditor**
A creditor is a person, corporation, or other entity to whom debtor owes a debt that was incurred before the date of the bankruptcy filing. See 11 U.S.C. §101 (10).

**Claim**
A claim is the creditor's right to receive payment for a debt owed by the debtor on the date of the bankruptcy filing. See 11 U.S.C. §101 (5). A claim may be secured or unsecured.

**Proof of Claim**
A proof of claim is a form used by the creditor to indicate the amount of the debt owed by the debtor on the date of the bankruptcy filing. The creditor must file the form with the clerk of the same bankruptcy court in which the bankruptcy case was filed.

**Secured Claim Under 11 U.S.C. § 506 (a)**
A secured claim is one backed by a lien on property of the debtor. The claim is secured so long as the creditor has the right to be paid from the property prior to other creditors. The amount of the secured claim cannot exceed the value of the property. Any amount owed to the creditor in excess of the value of the property is an unsecured claim. Examples of liens on property include a mortgage on real estate or a security interest in a car. A lien may be voluntarily granted by a debtor or may be obtained through a court proceeding. In some states, a court judgment is a lien.

A claim also may be secured if the creditor owes the debtor money (has a right to setoff).

**Unsecured Claim**
An unsecured claim is one that does not meet the requirements of a secured claim. A claim may be partly unsecured if the amount of the claim exceeds the value of the property on which the creditor has a lien.

**Claim Entitled to Priority Under 11 U.S.C. § 507 (a)**
Priority claims are certain categories of unsecured claims that are paid from the available money or property in a bankruptcy case before other unsecured claims.

**Redacted**
A document has been redacted when the person filing it has masked, edited out, or otherwise deleted, certain information. A creditor must show only the last four digits of any social-security, individual's tax-identification, or financial-account number, only the initials of a minor's name, and only the year of any person's date of birth. If the claim is based on the delivery of health care goods or services, limit the disclosure of the goods or services so as to avoid embarrassment or the disclosure of confidential health care information.

**Evidence of Perfection**
Evidence of perfection may include a mortgage, lien, certificate of title, financing statement, or other document showing that the lien has been filed or recorded.

## INFORMATION

**Acknowledgment of Filing of Claim**
To receive acknowledgment of your filing, you may either enclose a stamped self-addressed envelope and a copy of this proof of claim or you may access the court's PACER system (www.pacer.psc.uscourts.gov) for a small fee to view your filed proof of claim.

**Offers to Purchase a Claim**
Certain entities are in the business of purchasing claims for an amount less than the face value of the claims. One or more of these entities may contact the creditor and offer to purchase the claim. Some of the written communications from these entities may easily be confused with official court documentation or communications from the debtor. These entities do not represent the bankruptcy court or the debtor. The creditor has no obligation to sell its claim. However, if the creditor decides to sell its claim, any transfer of such claim is subject to FRBP 3001(e), any applicable provisions of the Bankruptcy Code (11 U.S.C. § 101 *et seq.*), and any applicable orders of the bankruptcy court.

STATE OF NEVADA
DECLARATION OF VALUE

THE UNDERSIGNED HEREBY CERTIFIES
THIS TO BE A TRUE AND CORRECT
COPY OF THE ORIGINAL
Fidelity National Title Agency of Nevada, Inc.

1. Assessor Parcel Number(s)
   a) 178-15-311-038
   b) _____
   c) _____
   d) _____

2. Type of Property:
   a) ☐ Vacant Land       b) ☑ Single Fam. Res.
   c) ☐ Condo/Twnhse      d) ☐ 2 - 4 Plex
   e) ☐ Apt. Bldg.        f) ☐ Comm'l/Ind'l
   g) ☐ Agricultural      h) ☐ Mobile Home
   i) ☐ Other

<table>
<tr><th>FOR RECORDER'S OPTIONAL USE ONLY</th></tr>
<tr><td>Document/Instrument #: _____</td></tr>
<tr><td>Book: _____ Page: _____</td></tr>
<tr><td>Date of Recording: _____</td></tr>
<tr><td>Notes: _____</td></tr>
</table>

3. Total Value/Sales Price of the Property:        $ 0.00
   Deed in Lieu of Foreclosure Only (Value of Property) $ 0.00
   Transfer Tax Value:                              $ 0.00
   Real Property Transfer Tax Due                   $ 0.00

4. If Exemption Claimed:
   a. Transfer Tax Exemption per NRS 375.090, Section 3
   b. Explain Reason for Exemption: True value

5. Partial Interest: Percentage being transferred: 100%

The undersigned declares and acknowledges, under penalty of perjury, pursuant to NRS 375.060 and NRS 375.110, that the information provided is correct to the best of their information and belief, and can be supported by documentation if called upon to substantiate the information provided herein. Furthermore, the parties agree that disallowance of any claimed exemption, or other determination of additional tax due, may result in a penalty of 10% of the tax due plus interest at 1% per month. Pursuant to NRS 375.030, the Buyer and Seller shall be jointly and severally liable for any additional amount owed.

Signature _____  Capacity: Spouse
Signature _____  Capacity: Spouse

SELLER (GRANTOR) INFORMATION          BUYER (GRANTEE) INFORMATION
(REQUIRED)                            (REQUIRED)

Print Name: Sandra Richardson and      Print Name: Jon Richardson and Sandra
Jon Richardson                                     Richardson
Address: _____           Address: 7285 Sunset Meadows
City, State, Zip: _____                    Avenue
                                       City, State, Zip: Henderson, NV 89052

COMPANY/PERSON REQUESTING RECORDING (required if not seller or buyer)
Print Name: Fidelity National Title Agency of Nevada     Escrow #: 05-184118-MD
Address: 2850 Horizon Ridge Pkwy., Suite 120
City, State and Zip: Henderson, NV 89052

(AS A PUBLIC RECORD THIS FORM MAY BE RECORDED/MICROFILMED)

THE UNDERSIGNED HEREBY CERTIFIES
THIS TO BE A TRUE AND CORRECT
COPY OF THE ORIGINAL.
Fidelity National Title Company of Nevada, Inc.

By _____

Assessor's Parcel Number: 178-19-811-039

When recorded mail to:
BANKWEST OF NEVADA
2700 WEST SAHARA AVENUE
LAS VEGAS, NEVADA 89102
Mail Tax Statements to:
JON RICHARDSON
2252 STERREY MEADOWS AVENUE
HENDERSON, NEVADA 89052
Prepared By:

Recording Requested By:

184116-MD

[Space Above This Line For Recording Data]

## DEED OF TRUST

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

(A) **"Security Instrument"** means this document, which is dated September 1, 2005, together with all Riders to this document.

(B) **"Borrower"** is JON RICHARDSON and SANDRA RICHARDSON husband and wife as joint tenants with full rights of survivorship. Borrower is the trustor under this Security Instrument.

(C) **"Lender"** is BANKWEST OF NEVADA, a Nevada Corporation. Lender is a corporation organized and existing under the laws of the State of NEVADA. Lender's address is 2700 West Sahara Avenue, LAS VEGAS, NEVADA, 89102. Lender is the beneficiary under this Security Instrument.

(D) **"Trustee"** is FIDELITY NATIONAL TITLE-ESCROW.

(E) **"Note"** means the promissory note signed by Borrower and dated September 1, 2005. The Note states that Borrower owes Lender Three Hundred Ninety Two Thousand And 00/100 Dollars (U.S. $ 392,000.00) plus interest. Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than October 1, 2035.

(F) **"Property"** means the property that is described below under the heading "Transfer of Rights in the Property."

(G) **"Loan"** means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.

(H) **"Riders"** means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower (check box as applicable):

NEVADA-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT    Form 3029 1/01

Page 1 of 18                                                      Initials: _____

nvmtl

Assessor's Parcel Number: 178-19-811-039

When recorded mail to:
BANK OF WEST OF NEVADA,
2700 WEST SAHARA AVENUE
LAS VEGAS, NEVADA, 89102
Mail Tax Statements to:
JON RICHARDSON
2282 SURREY MEADOWS AVENUE
HENDERSON, NEVADA 89052
Prepared By:

Recording Requested By:

[X]  Adjustable Rate Rider          [ ]  Condominium Rider          [ ]  Second Home Rider
[ ]  Balloon Rider                 [X]  Planned Unit Development Rider  [ ]  1-4 Family Rider
[ ]  VA Rider                      [ ]  Biweekly Payment Rider       [ ]  Other(s) [specify]

(I) "Applicable Law" means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.

(J) "Community Association Dues, Fees, and Assessments" means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.

(K) "Electronic Funds Transfer" means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

(L) "Escrow Items" means those items that are described in Section 3.

(M) "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

(N) "Mortgage Insurance" means insurance protecting Lender against the nonpayment of, or default on, the Loan.

(O) "Periodic Payment" means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

(P) "RESPA" means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter.

NEVADA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT          Form 3029 1/01
Page 2 of 18                                                                Initials: [signature]

nved

As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

(Q) "Successor in Interest of Borrower" means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY

This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in the County [Type of Recording Jurisdiction] of CLARK [Name of Recording Jurisdiction]:

SEE PRELIM

Parcel ID Number: 178-19-811-039

which currently has the address of

2182 SHIRLEY MEADOWS AVENUE [Street]

HENDERSON [City] , Nevada 89052 [Zip Code] ("Property Address"):

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property."

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

NEVADA-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT   Form 3029 1/01
Page 3 of 18

Initials: _____

1. **Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

2. **Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

3. **Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of

NEVADA-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT  Form 3029 1/01

Page 4 of 18

Initials: _____

amounts due for (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the

NEVADA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT         Form 3029 1/01
Page 5 of 18

Initials: _____

amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

4. **Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

5. **Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security

NEVADA–Single Family–Fannie Mae/Freddie Mac UNIFORM INSTRUMENT     Form 3029 1/01
Page 5 of 18

Initials: ___

Insurance. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

6. Occupancy. Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

7. Preservation, Maintenance and Protection of the Property; Inspections. Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the

NEVADA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT    Form 3029 1/01

Page 7 of 18

Initials: _____

Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

8. Borrower's Loan Application. Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

9. Protection of Lender's Interest in the Property and Rights Under this Security Instrument. If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

NEVADA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT   Form 3029   1/01

Page 8 of 18

Initials:

**10. Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.

Initials: _____

(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

11.  Assignment of Miscellaneous Proceeds; Forfeiture. All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing

NEVADA–Single Family–Fannie Mae/Freddie Mac UNIFORM INSTRUMENT  Form 3029 1/01
Page 10 of 18

Initials:

Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

**12.  Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**13.  Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

**14.  Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

NEVADA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT    Form 3029 1/01

Page 11 of 18

Initials:

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

15. **Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

16. **Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

17. **Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

18. **Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

NEVADA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT     Form 3029 1/01

Page 12 of 18        Initials:

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given, in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

19. **Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

20. **Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Initials:

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

21. **Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

**22. Acceleration; Remedies.** Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option, and without further demand, may invoke the power of sale, including the right to accelerate full payment of the Note, and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the power of sale, Lender shall execute or cause Trustee to execute written notice of the occurrence of an event of default and of Lender's election to cause the Property to be sold, and shall cause such notice to be recorded in each county in which any part of the Property is located. Lender shall mail copies of the notice as prescribed by Applicable Law to Borrower and to the persons prescribed by Applicable Law. Trustee shall give public notice of sale to the persons and in the manner prescribed by Applicable Law. After the time required by Applicable Law, Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Trustee determines. Trustee may postpone sale of all or any parcel of the Property by public announcement at the time and place of any previously scheduled sale. Lender or its designee may purchase the Property at any sale.

Trustee shall deliver to the purchaser Trustee's deed conveying the Property without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

**23. Reconveyance.** Upon payment of all sums secured by this Security Instrument, Lender shall request Trustee to reconvey the Property and shall surrender this Security Instrument and all notes evidencing debt secured by this Security Instrument to Trustee. Trustee shall reconvey the Property without warranty to the person or persons legally entitled to it. Such person or persons shall pay any recordation costs. Lender may charge such person or persons a fee for reconveying the Property, but only if the fee is paid to a third party (such as the Trustee) for services rendered and the charging of the fee is permitted under Applicable Law.

**24. Substitute Trustee.** Lender at its option, may from time to time remove Trustee and appoint a successor trustee to any Trustee appointed hereunder. Without conveyance of the Property, the successor trustee shall succeed to all the title, power and duties conferred upon Trustee herein and by Applicable Law.

NEVADA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT   Form 3029 1/01
Page 15 of 18

Initials: _____



25. Assumption Fee. If there is an assumption of this loan, Lender may charge an assumption fee of U.S. $ 3,920.00.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

Witnesses:



_____ (Seal)
JON RICHARDSON                      -Borrower

_____ (Seal)
SANDRA RICHARDSON                   -Borrower

_____ (Seal)
                                    -Borrower

_____ (Seal)
                                    -Borrower

NEVADA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT          Form 3029  1/01
Page 17 of 18

**SHORT SALE – LOSS MITIGATION**
Must Accompany Returned Short Sale Approval

Date: 5/25/12

DMI Loan # 1481105997

Homeowner Name: Ken & Sandra Richardson

We have approved a Shortsale and Release of all collateral on this Loan.

We wish to pursue the deficiency: _____ NO ✓ YES

If no........

Dovenmuehle Mortgage Inc. will prepare a full Satisfaction of the note

**YOU MUST PROVIDE PROVIDE THE FOLLOWING:**
- COPY OF THE HUD-1 SETTLEMENT STATEMENT
- COPY OF THE MOST RECENT BPO OR APPRAISAL
- COPY OF THE MOST RECENT TITLE REPORT OR COPY OF THE
  RECORDED MORTGAGE OR DEED OF TRUST

If yes........                Amount of deficiency: $ 202,490.89

Client, not Dovenmuehle Mortgage Inc., must prepare the Release of Collateral.

_____                    5/25/12
Client Signature                             Date

* NOTE, some states do not allow the pursuit of deficiency, it is your responsibility
as the Lender to know if this is allowable if you checked "YES" above.

# SHORT SALES NET PROCEEDS
## CLIENT NEGOTIATES WORKOUT

Date: 5/25/12

Date #: 4430504F

Investor Name: Bank of Nevada     Borrower Name: Jon & Sandra Richardson

Current Appraised Value: $240,000.00     Investor Code: BOF

Short Payoff Check in the Amount of $195,332.54   Check # 1010640203 + 1010640207

Are funds going to be sent to DMI for processing?   [X] Yes  [ ] No

If yes

(1) Notify Client Analyst of wiring information.

Federal Reference #:                    $ Amount:

(2) Forward funds received to the Research Department to the attention of the Client Analyst.

Corporate Advance: $

UPB: $ 195,332.54     Interest: $            Other: $

Escrow Advance: $

Corporate Advance: $

(If reinstatement, directions are not received from borrower within 72 hours, Client Analyst will apply funds to loan in error above)

1. Reinstate corporate adv., escrow adv. with non-cash transaction.   [X] Y  [ ] N

2. Bill for corporate adv., escrow adv. to 3rd day remittance   OK.  If applicable   [X] Y  [ ] N

3. Delete charge off amount from UBR1 Field 1.   [X]

4. Enter amount from chargeoff amount of ____   in UBR1 Field 2.

5. Echo amount of previously charged off debt of ____   in UBR 15 POS Field 20.

6. Enter the date of the last charge off. ____   in the date Field 89.

Now is remaining UPB to be handled?   Remove as a non-cash transaction.   [X] Y  [ ] N ____

Are you going to pursue a deficiency balance?   [ ] Yes  [X] No

Is DMI to prepare the release?   [ ] Yes  [X] No

If you are presenting a deficiency, D-9 will not prepare a release of mortgage or satisfaction of mortgage.

If not, was your directing DMI to prepare a full satisfaction of mortgage?

(If you are directing DMI to prepare a full satisfaction of mortgage, a copy of recorded mortgage and note is needed. Client Analysts will forward to Release Department. Please do not send copied documents to DMI.

Is DMI to prepare and send IRS form 1099C?   [ ] Yes  [X] No

Is the loan exist amount to be reported to credit bureaus?   [ ] Yes  [X] No

Please provide the borrowers forwarding address:
2285 Surrey Meadows Ave
Henderson NV 89052

Signator Name: _____
(Please sign and date)

Telephone #: _____



https://www.fedex.com/shipping/html/en/PrintIFrame.html

5/18/2012

April 16, 2012
Jon & Sandra Richardson
Page 4

## DISBURSEMENT OF PAYOFF FUNDS

### YOU MUST FOLLOW THESE INSTRUCTIONS EXPLICITLY!

CERTIFIED CHECK OR CASHIERS CHECKS ONLY. PAYABLE TO:

Dovenmuehle Mortgage, Inc

The closing package must be overnighted to the following address:

Dovenmuehle Mortgage, Inc
Attn: Anthony Fiore
1 Corporate Drive Suite 360
Lake Zurich, IL 60047

The closing package must include the following documentation:

Certified check or Cashier check
Original or copy of HUD signed by both buyers and sellers
Copy of fully executed purchase contract.
Short sale approval letter signed by the sellers ONLY.

**FINAL HUD MUST BE SIGNED BY BOTH BUYERS AND SELLERS OR THIS SHORT SALE IS NULL AND VOID.**

## Short Sale Request Analysis

**Jon & Sandra Richardson Loan #1418110097 ($391,873 & HELOC #12136101 ($56,000)**

| | RDO - Primary: | RDO - Co-borrower: | |
|---|---|---|---|
| PFS As Of: | 12/19/11 | 540 | 9? |

**ASSETS**

| | | LIABILITIES | |
|---|---|---|---|
| Cash & Bond Checking/Savings | $ | Revolving Debt | $ 88,340 |
| Stocks & Bonds/Mutual Funds | $ | Installment Loans (autos) | $ 59,221 |
| Cash Surrender Value of Life Ins. | $ | Installment Loans (other) | |
| IRA and Other Retirement Accounts | $ 73,600 | (other Payable) | |
| Business Interests (2-11 Paychecks) | $ | Business Debt | |
| Residence 2282 Surrey Meadows av | $ 340,000 | RE Mortgage (Residence) BOV | $ 391,873 |
| RE (R2) | $ | RE HELOC (R2,BOV) | $ 56,000 |
| RE (R3) | $ | Real Estate HELOC on #2 | |
| Auto | $ 80,000 | | |
| Other Personal Property | $ | | $ 12,288 |

| **Total Assets** | $ 473,600 | Total Liabilities | $ 546,733 |
| | | Net Worth | $ (73,133) |

**INCOMES:**

| | Employer | Position | Gross Monthly | Deductions | Net Monthly | Net Annual |
|---|---|---|---|---|---|---|
| SALARY 1 | EPA | IT Manager | $ 7,001 | $ 1,806 | $ 5,217 | $ 65,605 |
| SALARY 2 | Eldorado Casino | HR Officer | $ 3,650 | $ 1,708 | $ 1,945 | $ 23,334 |
| Other | | | | | | |
| INTEREST INCOME (PENSIONS) | | | | | $ - | $ - |
| K-1 DISTRIBUTIONS (RECURRING) | | | | | $ - | $ - |
| K-1 DISTRIBUTIONS/DIVIDENDS | | | | | $ - | $ - |
| Other (from Rental Exp. sch.) | Student Loans | | | | $ - | $ - |
| **TOTAL INCOME** | | **Total Monthly:** | | | $ 7,162 | $ 85,940 |

**EXPENSES:**

| | | | | Monthly | Annual |
|---|---|---|---|---|---|
| MORTGAGE/RESIDENCE | $ 391,873 | Bank of Nevada, current payment | | $ 2,094 | $ 25,128 |
| OTHER REAL ESTATE PMT(S) | $ 56,000 | Bank of Nevada HELOC | | $ 155 | $ 1,860 |
| HOME EQUITY LOAN PMT(S) | | | | $ - | $ - |
| AUTO LOAN(S) | | | | $ 1,228 | $ 14,736 |
| INSTALLMENT DEBTS | | | | $ - | $ - |
| REVOLVING DEBT PAYMENTS | | | | $ 2,365 | $ 28,380 |
| OTHER HOUSEHOLD EXPENSES | | | | $ - | $ - |
| TOTAL MONTHLY FIXED EXPENSE | | | | $ 5,832 | $ 69,966 |
| TAXES: STATE INCOME TAX | | | | $ - | $ - |
| FEDERAL INCOME TAX | | | | $ 1,280 | $ 15,360 |
| Other (Med. expenses, Groceries, Utilities, etc.) | | | | $ 501 | $ 6,685 |
| **TOTAL ESTIMATED REQUIREMENT:** | | | | $ 7,112 | $ 85,395 |

| **EXCESS AVAILABLE TO BORROWER** | $ 50 | $ 566 |

| | | |
|---|---|---|
| Monthly Exp. (CR dtd 11-09-11) | | |
| Installment Debt 1 | $ | 729 |
| Installment Debt 2 | $ | 489 |
| Revolving Debt 1 | $ | 2,365 |
| Revolving Debt 2 | $ | - |
| Offer 2 | $ | 194 |
| **Total Monthly Debt** | $ | 3,777 |

| | | |
|---|---|---|
| Monthly Inc. Borr. 1 | $ | 2,249 |
| Monthly Inc. Borr. 1 | $ | 5,217 |
| Monthly Inc.Borr. 2 | $ | 1,945 |
| Gross Monthly Inc. | $ | 10,670 |
| Monthly Expenses | $ | 3,777 |
| (A + P / E) DTI | | 21% |
| (A/P) HDTI | | 55% |

| | | |
|---|---|---|
| 2282 Surrey Meadows Hend NV 89052 | | |
| Appraised Date | | 08/08/11 |
| Appraised Amount | $ | 240,000 |
| Short Sale Offer Date | | 12/02/11 |
| Short Sale Offer Amt. | $ | 210,000 |
| Principal Balance | $ | 381,573 |
| HELOC | $ | 56,000 |
| Net Active Balance | $ | 381,573 |
| Total to BOV | $ | 447,873 |
| SS Net to BOV | $ | 156,260 |
| SS Shortfall on the 1st | $ | 208,013 |
| Reserve Amount | | $164,789 |

**RECOMMENDATION:**

Jon & Sandra Richardson purchased the 2282 Surrey Meadows Ave. residence in 2005 with a $392M I/O mortgage @ 6.625%. BON also approved a $56M HELOC. Borrowers requested a modification but were declined as even at a lower rate, P&I payments would be very close to the current I/O payments. Also they acquired two new vehicles in 2011. (1) a Lexus with $729/month leased on 02-11 & (2) a VW with $499/month purchased on 08/11 which seriously impacts their monthly cash flow. The borrower admitted that the hardship letter dated 12-29-11 was embellished by the broker and that they suffered a temporary hardship in August/September 2011. Jon works for the EPA @ an annual salary of $84M & his wife Sandra works at the ElDorado Hotel/casino with an annual salary of $44M. Net active is $391,873. The HELOC current outstanding balance is $56,000. The property appraised for $240M on 08/08/11.

Borrower is requesting a full waiver of the deficiency. This recommendation is to decline the short sale request as presented as we will not forgive deficiency.

Joseph Chichino

Josef Nichols

Joseph Pope