THE FURNIER MUZZO GROUP LLC  
3311 S. Rainbow Street, Suite 104  
Las Vegas, NV 89146  
Telephone: (702) 728-5285  
Email: croberts@furnierlaw.com  

Attorneys for Creditor, Bank of Nevada

**Electronically filed on October 15, 2014**

# UNITED STATES BANKRUPTCY COURT
## District of Nevada

| | |
|---|---|
| In re | CASE NO. BK-S-13-11392-MKN |
| JON RICHARDSON and<br>SANDRA ELIZABETH RICHARDSON | Chapter 7 |
| | **OPPOSITION TO DEBTORS' OBJECTION TO PROOF OF CLAIM OF BANK OF NEVADA** |
| Debtors. | |
| | Date: October 29, 2014<br>Time: 9:30 a.m. |
| | Ctrm: 2<br>      Foley Federal Building<br>      300 Las Vegas, Blvd. So.<br>      Las Vegas, NV 89101<br>Judge: Hon. Mike K. Nakagawa |

    **COMES NOW** Creditor, Bank of Nevada hereinafter referred to as ("the Bank") by and through its counsel, Christine A. Roberts, Esq. of the Furnier Muzzo Group LLC. This Opposition is based upon the entire case file, the pleadings contained herein, the affidavit of Michael Marcellette, the affidavit of Christine A. Roberts, Esq. and any oral argument the court may wish to entertain.

/ / /

/ / /

/ / /

350075-v1

## I. STATEMENT OF FACTS

1. On or about September 1, 2005 Debtors entered into a loan agreement with Bank of Nevada in the amount of $392,000. The loan was secured by a Deed of Trust on real property.

2. Subsequently, on June 5, 2007 Debtors entered into a second loan agreement with Bank of Nevada. That loan was also secured by a Deed of Trust on real property.

3. Debtors defaulted on the loan. The Debtors entered into a short sale agreement with Bank of Nevada whereby Debtors agreed to a deficiency balance of $206,612 on the first loan and a deficiency balance of $56,000 on the second loan.

4. Debtors agreed to enter into a forebearance agreement with the Bank on the deficiency balances. After the Bank prepared the agreement however, Debtors refused to sign it.

5. After the Debtors refused to sign the agreement the Bank filed its deficiency complaint in the Eighth Judicial District, Clark County, Nevada. Debtors were served with the complaint.

6. On February 22, 2013 Debtors filed a Chapter 13 bankruptcy Petition. On March 20, 2013, Bank of Nevada filed 2 claims, Claim number 6 in the amount of $57,790.20 relating to the second loan, and Claim number 7, in the amount of $202,490.89 relating to the first loan.

7. On Schedule F Debtors listed 4 debts to Bank of Nevada. One of the debts was listed as $56,000 for a deficiency balance on a mortgage. The other 3 were listed as $0.

8. The Bank's counsel informed Debtors' counsel that Debtors failed to list the deficiency balance on the second loan. (*See* Declaration of Christine A. Roberts filed in support of this Opposition.)

9. The Bank's counsel also informed Debtors' counsel that once the Bank's debts were properly scheduled, Debtors did not meet the Chapter 13 eligibility requirements as their unsecured debt exceeded the debt limit for Chapter 13 Debtors.

10. The Chapter 13 Trustee filed an Opposition to Confirmation of Debtors' Plan based upon, among other failures of the Debtors, their ineligibility for Chapter 13.

11. On November 13, 2013 the case was converted to one under Chapter 11.

1  12. On December 13, 2013 Debtors filed Amended Schedules. On the Amended Schedule F Debtors listed 2 debts to Bank of Nevada, one in the amount of $202,490.89 and one in the amount of $57,790.20.

13. On January 22, 2014 Debtors again filed amended schedules and again listed debts owed to the Bank in the amounts of $57,790.20 and $202,490.80.

14. On January 24, 2014 Debtors yet again filed amended schedules and again listed debts owed to the Bank in the amounts of $57,790.20 and $202,490.80.

15. On neither the original schedules nor the three amended schedules, all signed under penalty of perjury, did the Debtors list the debt as liquidated, contingent or disputed.

16. The Debtors did not deny they owed the debt to Bank of Nevada at the Chapter 13 meeting of creditors or the Chapter 11 meeting of creditors.

17. Debtors' counsel, Brandon B. McDonald, Esq. had numerous conversations with the Bank's counsel regarding the case. Mr. McDonald repeatedly informed the Bank's counsel that he understood that the Bank was the largest creditor, that his clients desired to work with the Bank and that he would discuss the plan terms before filing a plan because he wanted the Bank to agree to its terms.

18. At the Chapter 11 341 (a) meeting of creditors when the Bank's counsel inquired when the Debtors anticipated they would have their plan on file Debtors' counsel stated that he anticipated the plan would be on file in January.

19. The Bank's counsel spoke with Debtors' counsel several times after January inquiring when the plan would be filed. Debtors' counsel indicated that he was trying to resolve some issues with the Debtors and that he was busy with his new law office.

20. On June 26, 2014 the Bank's counsel sent correspondence to Debtors' counsel indicating that he had not responded to her phone calls, that the plan had not been filed and that the Bank would be forced to file a motion to dismiss the case if no response was received.

21. On June 27, 2014 Debtors' counsel sent correspondence to the Bank's counsel indicating a willingness to continue settlement negotiations.

22. On September 25, 2014 Debtors filed an Objection to the Bank's claim. Debtors filed an Objection to only one of the Bank's two claims.

## II. LEGAL ARGUMENT

In the objection Debtors argue that the objection should be sustained based upon N.R.S. §40.455 because while the Bank had filed its complaint for the deficiency claims timely the bank had not filed an application for default judgment within 6 months of the closing of the short sale. Debtors also argued that the state court case had been dismissed on September 24, 2013 thereby preventing the Bank from re-opening the case. The case, however, was statistically dismissed without prejudice. The minutes of the court reflect that while there was a letter on file indicating a bankruptcy had been filed, there was no notice of bankruptcy on file and therefore the court dismissed the case. Debtors admitted that if the Bank had moved to re-open the case it would have violated the stay. Debtors argued that the Bank had an obligation to file a motion for relief from stay. As discussed below all of these arguments are flawed.

### A. **Debtors Erroneously Argue N.R.S. 40.455 Applies**

Debtors' reliance on N.R.S. §40.455 is misplaced, because that section does not deal with the situation at bar -- a deficiency claim made after a short sale. Debtors' objection conveniently omits the actual text of §40.455(1), upon which they rely:

> Except as otherwise provided in subsection 3, upon application of the judgment creditor or the beneficiary of the deed of trust within 6 months *after the date of the foreclosure sale or the trustee's sale held pursuant to NRS 107.080*, respectively, and after the required hearing, the court shall award a deficiency judgment to the judgment creditor or the beneficiary of the deed of trust if it appears from the sheriff's return or the recital of consideration in the trustee's deed that there is a deficiency of the proceeds of the sale and a balance remaining due to the judgment creditor or the beneficiary of the deed of trust, respectively.

(Emphasis added.) The language of the statute is clear and unambiguous -- the six-month limitation applies to properties that were sold at a foreclosure sale or trustee's sale. Instead, the sale here was a contractually agreed upon sale in lieu of foreclosure of the property -- also know as a "short sale." N.R.S. §40.455 on its face applies only to "foreclosure sale[s] or the trustee's sale[s] held pursuant to NRS 107.080." In Nevada, as in other jurisdictions, it is well established that a court must look to the "plain meaning of the words in the statute and 'will not look beyond the plain language of the

statute, unless it is clear that this meaning was not intended.'" *State v. Sargent*, 122 Nev. 210, 128 P.3d 1052 (Nev. 2006) *quoting State v. Quinn*, 117 Nev. 709, 713, 30 P.3d 1117, 1120 (2001); *internal citations omitted*. The plain language of §40.455 deals with foreclosure sales and trustee's sales, and not with short sales. As such, Debtors' reliance on the time limits contained in §40.455, and on *Walters v. Eighth Judicial District Court*, 263 P.3d 231 (Nev. 2011) (involving a trustee's sale), and *Lavi v. Eighth Judicial District Court of State ex. rel. Cnty. of Clark*, 325 P.3d 1265 130 Nev. Adv. Rep. 38 (2014) (involving a trustee's sale) is misplaced.

Indeed, if the legislature had wanted to set a limit on the time during which a creditor could bring a deficiency action after a short sale other than the general limitations periods set forth in the Nevada Revised Statutes, it could have. In N.R.S. §40.458, the legislature directly addressed the requirements for a "sale in lieu of a foreclosure sale." §40.458(2)(b) defines a sale in lieu of a foreclosure sale as:

> . . . a sale of real property pursuant to an agreement between a person to whom an obligation secured by a mortgage or other lien on real property is owed and the debtor of that obligation in which the sales price of the real property is insufficient to pay the full outstanding balance of the obligation and the costs of the sale. The term includes, without limitation, a deed in lieu of foreclosure.

This describes exactly the situation with the Debtors' property. While the legislature did restrict the circumstances under which a creditor could bring a deficiency action after a short sale, it did not impose a specific limitations period. N.R.S. §40.458(1). The Nevada legislature could have included a specific time limit in §40.458, or it could have included the phrase "sale in lieu of foreclosure" in §40.455, but it did neither. Instead, it placed different rules on different scenarios, and did not put a special time limit on the bringing of a deficiency action after a sale in lieu of foreclosure. Debtors now seek to apply the rules for foreclosure sales and trustee's sales to a sale in lieu of foreclosure, because they have no grounds to argue that the Bank violated any of the standards that actually do apply to short sales. Clearly, the rules are different for each, so the time limits set forth in §40.455

do not apply to the Bank of Nevada's claim against Debtors.[1] As such, the Debtor's objection is not well founded, and must be overruled.

### B. Even if N.R.S. 40.455 Applied, Debtors Reliance on the Case Law is Misplaced

But even assuming that the six-month limit set forth in N.R.S. §40.455 did apply to short sales, notwithstanding the statute's clear language to the contrary, Debtors' reliance on the *Walters* and *Lavi* cases is misplaced. In *Walters v. Eight Judicial Dist. Court*, 263 P.3d 231 (Nev. 2011), the Nevada Supreme Court did *not* definitively hold that filing a complaint for deficiency cannot constitute an "application" under §40.455. Instead, what the Nevada Supreme Court actually says is something different. First, the Court recognizes that "NRS 40.455(1) does not state how an application should be made." *Id* at 234. The Supreme Court then goes on to say that it agrees with the creditor's argument that its motion for summary judgment satisfied the requirement. Nowhere in the *Walters* opinion does the Supreme Court say that a complaint for deficiency alone is insufficient, or that an additional motion is required. Indeed, in *Lavi v. Eight Judicial Dist. Court*, 263 P.3d 231 (2014), the Supreme Court specifically says that in the *Walters* decision, "we did not consider the counterclaim argument." *Id.* at 1268. So, while *Walters* stands for the proposition that a motion for summary judgment is sufficient to satisfy the requirement for an application under §40.455, it does not hold that such a motion is necessary. .Debtors attempt to extend the ruling in *Walters* to say that such a motion is necessary by relying on *Lavi*. In *Lavi*, the Supreme Court did hold that the complaint filed by the creditor did not satisfy the requirement of an "application" for a deficiency judgment in that matter. However, Debtors ignore one critical factual difference between the situation in *Lavi* and the situation at bar -- in *Lavi*, the complaint the creditor was relying on was filed *before* the foreclosure sale. "A right to deficiency judgment does not vest until the secured property is sold. Therefore, a complaint *filed before the foreclosure sale* cannot sufficiently put an obligor on notice that the deed of trust beneficiary intends to seek further recovery from the obligor." *Lavi*, 325 P.3d 1269 (citations omitted and emphasis added). As the Supreme Court's

---

[1] Under N.R.S. §11.190(1)(b), an action upon a contract must be brought within 6 years. Therefore, the Bank has six years to bring its deficiency action against Debtors.

- 6 -

language here clearly indicates, the fact that the complaint was filed before the foreclosure was the key in its decision that creditors had not filed a timely application, and not any inherent inability of a timely-filed complaint to serve that purpose. Indeed, as the dissenting opinion in *Lavi* helpfully points out:

> Lavi conceded at oral argument that BB&T's complaint against him for breach of guaranty qualified as an "application" for a "deficiency judgment" under NRS 40.455 in every respect except one: BB&T filed it three-and-a-half months *before* instead of "*within 6 months after*" the foreclosure sale (emphasis added). See, *e.g.*, Shields, 102 Nev. at 618 n.2, 730 P.2d at 430 n.2 (to make application for a "deficiency judgment" the lender must file a complaint against the guarantor within the time set by NRS 40.455).

*Id.* at 1272 (emphasis in original). So even Mr. Lavi himself recognized that a complaint is enough to serve as an application under §40.455. Indeed, the Nevada Supreme Court has recognized as much in the case cited by the dissent, *First Interstate Bank v. Shields*, 102 Nev. 616, 618 n.2, 730 P.2d 429, 430 (1986) ("The district court, in implicitly resolving the issue of the timeliness of the *complaint* in respondents' favor, was correct" (emphasis added)). *See also Nev. State Bank v. Jamison Family Partnership*, 106 Nev. 792, 797-798, 801 P.2d 1377, 1381 (1990) (an answer and counterclaim constitute a qualifying application). Therefore, Debtors' reliance on *Walters* and *Lavi* to argue that the post-sale deficiency complaint here was insufficient to constitute an "application" under §40.455 is, at best, incorrect, and borders on the disingenuous.

### C. The Underlying Case Was Dismissed for Debtors' Failure to Abide by Rules

Debtors try to argue that because the state court administratively dismissed the deficiency action, the Bank's complaint never existed, and cannot count as an "application." Again, the Debtors argument on this point omits a key fact. Specifically, the dismissal of the deficiency action was the result of a failure of the Debtors themselves to file a Notice of Bankruptcy in that action. Pursuant to the Local Rules of United States Bankruptcy Court District of Nevada, Rule 1002:

> Within fourteen (14) days after filing a bankruptcy petition, the debtor **must** file a notice of the bankruptcy case in any proceeding where any claim or cause of action is pending against, or on behalf of, the debtor. The debtor **must** file evidence of service of the notice with the bankruptcy court within seven (7) days after service is completed.

(Emphasis added.) A review of the docket of the deficiency case, as well as the docket here, shows that Debtors failed to follow this mandatory procedure. The Bank's counsel sent correspondence to the court indicating that Defendants had filed for bankruptcy. Indeed the minutes of the court attached to Debtors' own objection (at Exhibit 2 ) reflects that the court noted that a letter had been sent to the court about the bankruptcy but since there was no notice of the bankruptcy the court was going to dismiss the case without prejudice. Debtors have the audacity to now try to take advantage of the situation caused by their failure to follow the rules. To allow them to do so would fly in the face of the purpose of those very rules and conventional notions of fairness.

Even assuming that Debtors' deception on the state court were allowed to stand, the Bank still has time to fix the problem the Debtors have created. The Bank has the recourse of moving the state court to reopen the dismissed case. However, because the Bank follows the rules of this and other Courts, it is unable to do so because of the bankruptcy stay. Indeed even Debtors admit it would have been a violation of the stay for the Bank to re-open the case.

### D. Even if the Bank were Obligated to Re-Open the Case 108 Tolls the Time to do so

Debtors argue the Bank had an obligation to re-open the case. Even if the that were true the time for the Bank to be able to do so does not run. Pursuant to 11 U.S.C.S. §108(c):

> if applicable nonbankruptcy law . . . fixes a period for *commencing or continuing* a civil action in a court other than a bankruptcy court on a claim against the debtor . . . and such period has not expired before the date of the filing of the petition, then such period does not expire until the later of--
> (1) the end of such period, including any suspension of such period occurring on or after the commencement of the case; or
> (2) 30 days after notice of the termination or expiration of the stay . . . with respect to such claim.

(Emphasis added.) The Nevada Supreme Court has been clear in its agreement with courts from other jurisdictions that the automatic stay in bankruptcy, pursuant to 11 U.S.C.S. §108(c) and its predecessor provision, suspends "all other statutes of limitations without exception." *Bader Enters. v. Becker*, 95 Nev. 807, 810, 603 P.2d 268 (1979), *citing Booloodian v. Ohanesian*, 91 Cal.Rptr. 923 (Cal.App. 1970) and *Wells v. California Tomato Juice*, 118 P.2d 916 (Cal.App. 1941). The 9th Circuit and other courts have regularly held that the automatic stay provisions of the bankruptcy code suspend state statutes of limitation and similar time limits. *United States v. Dos Cabezas*

*Corp.*, 995 F.2d 1486 (9th Cir. 1993) ("No one disputes that the Corporation's petition for bankruptcy stayed the government's action to foreclose on the deed of trust; the real estate conveyed in the deed constitutes property of the estate"); *Diamond Hill Inv. Co. v. Shelden*, 767 P.2d 1005, 1011 (Wyo. 1989) ("The cases involving a conflict between the automatic stay and state law time constraints imposed upon creditors for taking some action . . . have consistently held that the time limitations are tolled during the pendency of the bankruptcy proceeding"); *Depner Architects & Planners v. Nev. Nat'l Bank*, 104 Nev. 560, 763 P.2d 1141 (1988) (holding that, pursuant to 108(c), creditors had until 30 days after the stay was lifted in order to file a complaint to enforce a mechanic's lien, extending the six-month period allowed for such claims under Nevada law). Clearly, all non-bankruptcy time limits in Nevada are tolled during the pendency of the bankruptcy stay, including any time limit on the Bank's ability to reopen the deficiency case. As such, the Debtors' argument amounts to nothing more than a straw man. It was their flaunting of the rules of the lower court that led to the administrative dismissal, and now they ignore the fundamentals of the bankruptcy rules in arguing that their bad conduct should be rewarded.

### E. **The Debtors are Judicially Estopped from Objecting to the Claim**

Debtors filed three amended schedules in December of 2013 and January of 2014 listing the debts as undisputed. All of the amended schedules were filed after the state court case was dismissed in September of 2013. Debtors also did not testify at either 341 meeting of creditors that they did not owe the debt. Further Debtors have only objected to one of the Bank's claims although they are based upon the same transaction.

Debtors are judicially estopped from objecting to the claim. This is only equitable. "Judicial estoppel is a flexible equitable doctrine that encompasses a variety of abuses, one for of which is preclusion of inconsistent positions that estops a party from gaining an advantage by taking one position and then seeking another advantage from an inconsistent position." *Cheng v. K & S Diversified Invs., Inc. (in re Cheng)*, 308 B.R. 448, 452 (9th Cir. BAP 2004), citing *Alary Corp. v. Sims (In re Assoc'd Vintage Group, Inc.)*, 283 B.R. 549, 265-6 (9th Cir. BAP 2002). In this case the Bank likely would have acted differently had Debtors not consistently assured the Bank that they desired to work with the Bank. As late as June 2014 settlement negotiations continued.

While numerous tests have been applied to determine whether judicial estoppel should be applied the 9th Circuit has condemned "playing fast and loose" with the court. *Cheng* at 453 citing *Hamilton v. State Farm & Cas. Corp.,* (270 F. 3d 778, 782 (9th Cir. BAP 1999). As noted in *Cheng* while inconsistent positions may be acceptable when a debtor is taking on different roles such as a debtor versus a debtor in possession, judicial estoppel may be applied when a debtor in possession takes inconsistent positions as the debtor in possession position. This principle is analogous to a case where a Debtor fails to list a claim on their schedules and is then estopped from pursuing that claim. In this case not only are Debtors taking an inconsistent position in the objection but are seemingly taking an inconsistent position with regard to the two claims arising from the same transaction as they have only objected to one of the claims.

Some courts have sanctioned Debtors' attorneys for taking positions inconsistent with the Debtors' schedules. "By filing a petition and schedules, a debtor makes a sworn statement under penalty of perjury regarding the debtor's understanding of his or her debts, and creditors file claims under that same scrutiny." *In re McFarland*, 462 B.R. 857 (Bankr. S.D. Fla. 2011), citing *In re Armstrong,* 320 B.R. 97, 107 (Bankr. N.D. Tex. 2005). In *McFarland* the court sanctioned the Debtors' attorney for filing an objection to a claim which was not listed as disputed. In the case at bar, that is exactly what the Debtors have done. They listed the debts to the Bank as undisputed on their schedules three times, and now they are trying to dispute the debt. As such, this Court should hold them to their sworn statements, and overrule this eleventh-hour objection.

Dated: October 14, 2014

THE FURNIER MUZZO GROUP LLC

By: _____
Christine A. Roberts, Esq.
Attorneys for Creditor, Bank of Nevada

350075-v1